## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DONALD ZIRKLE, | ) | CASE NO. 5:19-cv-1489 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MENARD, INC., et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for summary judgment (Doc. No. 30 ["MSJ]) filed by defendant[1] Menard, Inc. ("Menards" or "defendant"). Plaintiff Donald Zirkle ("Zirkle" or "plaintiff) filed a response in opposition (Doc. No. 33 ["Opp'n"], and the defendant filed a reply (Doc. No. ["Reply"]). For the reasons that follow, defendant's motion for summary judgment is granted.

## I.     BACKGROUND

Zirkle commenced this action in the Stark County Court of Common Pleas on June 3, 2019. The complaint sets forth a single count of negligence (premises liability). Defendant timely filed a notice of removal on June 27, 2019 on the basis of diversity jurisdiction. (Doc. No. 1).

The facts in the case are not complicated and are largely uncontested. On June 29, 2017, plaintiff Zirkle went shopping at Menards, a store he frequented. (Doc. No. 31-1, Deposition of Donald Zirkle ["Zirkle Dep."] at 179 (20)).[2] Zirkle had been employed in construction doing work

---

[1] The complaint includes several Doe defendants, who have never been served. All of these defendants are dismissed.

[2] All page number references are to the page identification number generated by the Court's electronic docketing system. Throughout this opinion, whenever the Court cites to a deposition transcript that is four pages to one, it will cite the page ID number, followed by the actual page number in parentheses.

that necessitated climbing up and down ladders. (*Id.* at 180 (22).) On the day of the incident, Zirkle purchased metal corners from Menards—a 10-foot and a 12-foot piece—and requested help loading the equipment into his trunk. (Doc. No. 35, Deposition of Trenton Gerber ["Gerber Dep."] at 326; Zirkle Dep. at 178 (16).) The cashier told Zirkle to ask the guard for help. The guard, in turn, said he would radio someone else for help. (Zirkle Dep. at 178 (16).)

Zirkle waited for fifteen minutes in the bay area, the area of the store that housed the roofing equipment he purchased, walking back and forth looking for somebody to help him. (*Id.*) Zirkle has purchased metal corners from Menards previously and he claims during those times he was immediately helped by an employee who then used the fork of a tow motor to ascend to the top of the loft to retrieve his metal corners. (*Id.* at 180–81 (24–25).) After fifteen minutes of waiting, Zirkle walked to the window section of the store where he has in the past consistently been able to find someone to help. (*Id.* at 178 (16).) Finding no employee in the window section, Zirkle returned to the bay area, where he saw an employee in a tow motor and assumed his helper had arrived; but the employee informed Zirkle he was assisting someone else. (*Id.* at 180 (21).) After searching the area again, Zirkle decided no one was going to help him. (*Id.*)

The metal corners were located in a bin sitting on top of a loft roughly six feet above the floor. (Gerber Dep. at 328.) The loft had three columns of shelves and was held together by vertical beams. (Zirkle Dep. at 179 (18).) There were no signs explicitly warning customers against climbing the shelves and no physical barriers to prevent climbing. In fact, Trenton Gerber, who was employed by Menards from 2009–2018, testified the metal corners are located in Menards' self-service area and, if someone is able to load up the equipment without help, they are free to do so. (Gerber Dep. at 319.) Zirkle claims that, in the past, he has observed and conversed with an employee climbing the shelves to retrieve items. That employee claimed climbing the shelves was

2

a "regular occurrence" in the store. Zirkle admits he has only seen that one employee climb the shelves, and that he thought what the employee did was dangerous, saying "It's construction. It's always dangerous." (Zirkle Dep. at 181 (26–27).) Zirkle also knew he could fall if he chose to climb the shelves, but still chose to do so in the same manner as the Menards employee he had seen. (*Id*. at 180 (22).) Additionally, Zirkle admitted that "[n]obody required [him] to climb up [the] display to get the product . . . ," and that instead of climbing the shelves he "could have gone back to the front counter where [he] had originally purchased the product and indicate to them no one had been around to help [him]" or "[he] could have continued to wait and see if the guy who had just come by [on the tow motor] was going to come back and help [him], . . ." and that he thought about doing both of these things. (*Id*. at 180 (24).) Instead, Zirkle chose to climb the display like he was climbing a ladder.

Q: Then was it at this point that you decided to just climb up and get the product yourself?

A: I thought well, it's like a ladder. I'm up on ladders all of the time. I practically lived on ladders when I was doing construction.

(*Id*. at 180 (21-22).) And he did this knowing "that [in] trying to climb up something shaped like a ladder [he] could fall[.]" (*Id*. at 180 (22.)

Zirkle was able to climb the shelves, retrieve the items, and place them on the ground while he was still on the shelves. (*Id*. at 181 (27).) Zirkle claims he was descending the shelves as one would descend a ladder and, while aiming for a hole to place his foot onto the third or fourth slat of the loft, his foot "like bounced out," and he lost his balance and fell. Zirkle explicitly states nothing touched him or knocked him off balance. (*Id*. at 182 (28–29).) The fall injured Zirkle's "right shoulder, right foot and ankle and left hip." (*Id*. at 186 (45, 47).)

## II.     SUMMARY JUDGMENT STANDARD

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record …; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases a court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Id*. at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co*., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v.*

4

*Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (concluding that summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); s*ee also Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988))).

Under this standard, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (quotation marks omitted) (citing *Anderson*, 477 U.S. at 247–48). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III.    DISCUSSION

#### A.    Introduction

In this case, Zirkle seeks to hold Menards responsible for damages on a negligent-premises theory of liability. "[F]ederal courts sitting in diversity apply the substantive law of the forum state and federal procedural law. Here, the applicable forum state is Ohio, so [the Court] will apply Ohio substantive law." *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 493 (6th Cir. 2019) (internal quotes and citations omitted).

To succeed on a negligence claim under Ohio law, plaintiff must prove by a preponderance of the evidence: (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting therefrom. *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1090 (Ohio 2003).

"A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Id*. at 1089; *Berkey v. Wal-Mart Stores, Inc.*, No. 15-cv-895, 2017 WL 5759360, at *1 (N.D. Ohio Nov. 28, 2017) (holding business owners must "exercise ordinary care to maintain the premises in a reasonably safe condition so that customers will not be unnecessarily and unreasonably exposed to danger") (quotation marks and citation omitted). But, "a shopkeeper is under no duty to protect business invitees from dangers 'which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.'" *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985) (quoting *Sidle v. Humphrey*, 233 N.E.2d 589 (Ohio 1968), paragraph one of the syllabus).

Menards argues there was no duty to warn about the danger of climbing the shelves and thus it was not negligent by not issuing a warning or erecting a barrier. Menards asserts its duty was extinguished because, similar to climbing a ladder, the danger of falling from climbing

6

shelving as if it were a ladder, was open and obvious and consequently did not necessitate an explicit warning. Alternatively, Menards asserts that Zirkle's primary assumption of the risk of using the shelves as if they were a ladder includes a known, inherent risk of falling—a risk Zirkle assumed when he chose to climb the shelves. Lastly, Menards argues that Zirkle's implied assumption of the risk of climbing the shelves by voluntarily exposing himself to a known danger, also acts as a bar to his claim. The Court will address each argument in turn.

### B.  Open and Obvious

Under Ohio law, if a condition is found to be open and obvious, the premises owner has no duty to take any extra precaution or offer any warning to protect a business invitee. *Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992). "The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning." *Id*. "When applicable … the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong*, 788 N.E.2d at 1090. Where, as here, facts are undisputed, "whether a danger is open and obvious presents a question of law." *Lang v. Holly Hill Motel*, No. 06CA18, 2007 WL 2199723, at *5  (Ohio Ct. App. May 23, 2007), *aff'd*, 909 N.E.2d 120 (Ohio 2009).

When applying the open and obvious rule, courts must "focus[] on the duty prong of negligence, … consider[ing] the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong*, 788 N.E.2d at 1091. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id*.

Menards argues that, because ladders are open and obvious dangers, Zirkle's decision to climb the shelf instead of waiting for store assistance was a choice he made knowing it could result

7

in harm. (MSJ at 139.) Menards is correct. In fact, Menards' characterization of the shelves as a "ladder" is generous. Here, Zirkle was climbing, not a ladder, but shelves. It hardly need be said that if, under the law, climbing a ladder is an open and obvious danger, *see, e.g., Venable v. Greater Friendship Baptist Church*, No. 09-MA-79, 2010 WL 2676481, at *4 (Ohio Ct. App. June 30, 2010) (affirming the trial court's finding that, although the ladder in question was homemade, plaintiff, "a professional roofer with training in the construction and use of ladders," ignored the open and obvious danger "and suffered the consequences[]"), climbing shelves is even more so.

The open and obvious doctrine is a complete bar to Zirkle's negligence claim[3] and, by itself, entitles Menards to summary judgment.

### C.    Primary Assumption of Risk

As an alternative to the open and obvious doctrine, Menards argues that it was relieved of any duty of care by Zirkle's primary assumption of the risk, thereby defeating plaintiff's prima facie case for negligence. (MSJ at 141.)

"[W]hen a plaintiff is found to have made a primary assumption of risk in a particular situation, that plaintiff is totally barred from recovery, as a matter of law[.]" *Gallagher v. Cleveland Browns Football Co.*, 659 N.E.2d 1232, 1236 (Ohio 1996). Primary assumption of risk

---

[3] Zirkle attempts to rely on an exception to the open and obvious doctrine. (Opp'n at 208.) He points to all of the following as "attendant circumstances" that substantially diminished the danger the "ladder" inherently posed: (1) Menards' failure to place the metal corners in a safe customer accessible area; (2) Menards' failure to provide a proper device to retrieve the metal corners from the top of the loft; (3) an employee's past usage of the shelves in a ladder-like manner; (4) Menards' failure to assist when Zirkle requested it; and (5) Menards' failure to erect barriers or post signs prohibiting customers from climbing onto the loft. (*Id.* at 212.) But Zirkle's reliance on this exception is misplaced because an "attendant circumstance" is "[a] significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would exercise to avoid an otherwise open and obvious hazard." *Bovetsky v. Marc Glassman, Inc.*, No. 2016CA00122, 2016 WL 6906148, at *3 (Ohio Ct. App. Nov. 14, 2016) (citation omitted). Not a single one of Zirkle's examples is a "distraction" in the sense of an "attendant circumstance."

is a strong defense because it functions as a complete bar to recovery for the plaintiff by asserting there is no duty whatsoever owed to the plaintiff by the defendant. *Id*.

When examining primary assumption of risk, the focus is on the activity itself and not on plaintiff's conduct. The elements of the activity being scrutinized are whether: "(1) the danger is ordinary to the [activity], (2) it is common knowledge that the danger exists[,] and (3) the injury occurs as a result of the danger during the course of the [activity]." *Ochall v. McNamer*, 79 N.E.3d 1215, 1228 (Ohio Ct. App. 2016).

Menards argues that, because climbing and descending ladders is inherently dangerous, Zirkle assumed the risk in a manner that relieves defendant of any duty of care. (MSJ at 142, citing *Foggin v. Fire Protection Specialists, Inc.*, No. 12AP-1078, 2013 WL 6708394, at *4 (Ohio Ct. App. Dec. 17, 2013) ("climbing ladders is inherently dangerous regardless of the ladder used[]").) Despite his deposition testimony, Zirkle argues that he was not engaging in an inherently dangerous activity, disingenuously mischaracterizing the activity in question as "shopping for metal corners at a retail hardware store." (Opp'n at 214.) Zirkle distinguishes his case from other primary assumption of risk cases on the basis that other cases involved sporting or recreational activities where the foreseeable danger cannot be eliminated. (*Id*. at 215.) Zirkle also claims climbing the shelves in Menards is distinguishable from other cases that found ladders dangerous because he was not using a ladder in "an active construction area." (*Id*. at 214.) But, the focus must remain on the activity itself and not on the environment. *Ochall*, 79 N.E.3d at 1231.

It is clear from both Zirkle's own deposition, where he admitted he was aware he could fall if he tried to climb the shelves, (Zirkle Dep. at 180 (21–22)), as well as the findings of other courts, that the simple activity of climbing involves the type of unremovable inherent danger that primary assumption of risk was meant to mitigate. *Morgan v. Ohio Conf. of United Church of Christ*, No.

9

11AP-405, 2012 WL 376678, at *4 (Ohio Ct. App. Feb. 7, 2012) (concluding primary assumption of risk applies to hiking because the risk of slipping, tripping, or falling cannot be eliminated).

Zirkle suffered from a fall, which is ordinary to the activity of climbing a ladder (and most certainly ordinary to climbing shelves) and is an unremovable risk. Therefore, Zirkle primarily assumed the risk when he used the shelves like a ladder. This defense acts as a total bar to recovery for plaintiff, notwithstanding any possible merit in his other arguments, and entitles Menards to summary judgment.

### D. Implied Assumption of the Risk

Menards also argues that Zirkle's claim is barred by the doctrine of implied assumption of the risk. In Ohio, this defense merges with contributory negligence for purposes of comparative fault where there is a duty of care owed. *Atkinson v. Archer*, No. 94APE03-416, 1994 WL 672875, at *2 (Ohio Ct. App. Nov. 29, 1994).

The doctrine of implied assumption of risk states that, so long as the "contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery in this action[,]" plaintiff can recover the damages resulting from the tortious conduct of one or more persons. Ohio Rev. Code Ann. §2315.33. Contributory fault can be shown through implied assumption of risk. *Stewart v. Urig*, 893 N.E.2d 245, 250 (Ohio Ct. App. 2008). Implied assumption of risk bars recovery if plaintiff "voluntarily exposes himself to a known and appreciated danger." *Atkinson*, 1994 WL 672875 at *3.[4]

This analysis assumes there was a duty owed. As stated above, Menards owed no duty of care to protect Zirkle from climbing the shelves. As Menards points out, Zirkle voluntarily exposed

---

[4] In *Atkinson*, the court further summarizes implied assumption of risk as "consent or acquiescence in an appreciated or known risk." *Atkinson*, 1994 WL 672875 at *2.

himself to the known and appreciated danger and, therefore, cannot recover for any injury. (MSJ at 143–44, citing *Atkinson*, 1994 WL 672875, at \*4.)

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Doc. No. 30) is granted and this case is dismissed.


**IT IS SO ORDERED**.

Dated: September 10, 2020

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

11